# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JEFFREY S. CLAY,

     Plaintiff,

v.                                  Case No. 3:17-cv-777-MMH-LLL

DEPARTMENT OF THE NAVY,

     Defendant.

_____

# **O R D E R**

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Doc. 85; Motion) filed on March 1, 2023.  In the Motion, the Department of the Navy (Navy) seeks dismissal of Plaintiff Jeffrey S. Clay's Second Amended Complaint to Compel the Release of Documents (Doc. 77; Second Amended Complaint), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Rule(s)).  Specifically, the Navy seeks to dismiss Clay's Freedom of Information Act (FOIA) claim on the grounds that the Navy has produced the information it had previously withheld, and thus Clay's claim is moot and the Court lacks subject matter jurisdiction over it.[1]  See Motion at 1, 15.  In support of the Motion, the Navy

---

[1] As indicated by the title of its Motion, the Navy also seeks—in the alternative—the entry of summary judgment in its favor on the same basis.  See Motion at 1, 15.  However, "summary judgment pursuant to Rule 56 is not the correct procedure for dismissing based on

presents the Declaration of Lieutenant Alyssa Degner-Lopez (Doc. 85-1; Declaration), to which she attaches documents pertinent to Clay's FOIA claim.[2]  In addition, the Navy provides a series of documents from a Florida state court criminal prosecution against Clay.  See generally Composite Exhibit 2 (Doc. 85-2).  Clay timely responded to the Motion.  See Plaintiff's Response to Defendant Refiling of Motion to Dismiss/Motion for Summary Judgment (Doc. 87; Response).[3]  In his Response, Clay argues that the materials which the Navy produced "do not, in any way, provide [him] with the information he knows exists or existed at the time he filed his original FOIA request, additional FOIA requests, appeals and subsequent correspondences."[4]  Id. at 3.  In support, Clay also attaches several exhibits

lack of subject matter jurisdiction" because the entry of summary judgment constitutes a ruling on the merits.  Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).  Because the Court determines this action is due to be dismissed for lack of subject matter jurisdiction, the Court does not address the alternative request for entry of summary judgment.

[2] Because the Navy filed the Declaration and its exhibits as a single document, the Court will simply refer to the page of a particular document as part of the Declaration rather than citing each document as a separate exhibit.  For ease of reference, the Court's citations to page numbers in documents in this record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

[3] Clay's use of the word "Refiling" appears to refer to the Navy's Notice of Re-Filing Exhibit 1 to Defendant's Motion to Dismiss/Motion for Summary Judgment (Doc. 86; Notice of Re-Filing).  In this document, the Navy re-filed Exhibit 1 of the Declaration to redact personal identifiers.  See generally Declaration; Notice of Re-Filing.  However, Clay's Response is directed at the Motion, not the Notice of Re-Filing.  See Response at 8 (requesting that the Court deny the Navy's "Motion to Dismiss/Motion for Summary Judgment").

[4] Clay also requests that the Court "find [his former commanding officer] Colonel Neuberger guilty" of unlawful command influence.  See Response at 8.  The Court does not consider this request for relief.  Colonel Neuberger is not a party to this case, and to the extent that Clay seeks criminal penalties against Neuberger, such a request is unavailing

related to the State of Florida criminal prosecution.  <u>See generally</u> <u>id.</u>  This matter is ripe for review.

## I.     Procedural History

Proceeding <u>pro se</u>, Clay initiated this action against the Navy by sending a letter to the Court, which the Court received on July 10, 2017.  (Doc. 1; Letter).  In the Letter, he attempted to assert a FOIA claim against the Navy.  <u>See id.</u>  Upon review, the Court struck the Letter and directed Clay to file a proper complaint.  <u>See</u> Order (Doc. 20; Order Striking Letter), entered April 9, 2018.  In doing so, the Court determined that Clay failed to comply with Rules 8 and 10, and explained that these rules "'require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.'"[5]  <u>Id.</u> at 2–3 (quoting <u>Fikes v. City of Daphne</u>, 79 F.3d 1079, 1082 (11th Cir. 1996)).  Because, in the Letter, Clay appeared to request that the Court investigate his claim, the Court also explained that it cannot "engage in its own independent

_____

because private citizens have "no judicially cognizable interest in the prosecution or non-prosecution of another."  <u>See</u> <u>Otero v. U.S. Att'y Gen.</u>, 832 F.2d 141, 141 (11th Cir. 1987).

[5] The Court also noted that, under the Local Rules of the United States District Court for the Middle District of Florida, "applications to the Court 'shall not be addressed or presented to the Court in the form of a letter or the like,'" and that the Court could have stricken the letter "on this basis alone."  <u>See id.</u> at 1.

investigation of [Clay's] claims." See id. at 3 n.2.  On May 9, 2018, Clay filed his Complaint against Department of the Navy and Motion to Compel the Release of Information (Doc. 24; Amended Complaint), in which he challenged "the Navy's repeated use of exemptions 5 and 6" in responding to his FOIA requests.  Amended Complaint ¶ 70.  In response, the Navy filed a motion for a more definite statement and asserted that it could not prepare a meaningful response to the Amended Complaint until Clay identified the particular documents or requests in dispute.  See generally United States' Motion for a More Definite Statement (Doc. 30), filed December 12, 2018.  On April 30, 2019, the Honorable James R. Klindt, United States Magistrate Judge, granted the Navy's motion and directed Clay to file a second amended complaint.  See generally Order (Doc. 33; Order to Amend).  In doing so, Judge Klindt instructed Clay that his second amended complaint should contain specific information about the FOIA requests he seeks to dispute, including, amongst other things, the "dates of the FOIA requests," a "description of the documents sought in each FOIA request," the "identification or request number assigned to each FOIA request," and the "documents that [Clay] contends were wrongfully withheld" or "wrongfully redacted" after any relevant appeals were resolved.  See id. at 2.  Clay, who was incarcerated, then notified the Court that he had been "temporarily relocated from" Wakulla Correctional Institution to the Duval County Jail because of an

upcoming postconviction hearing in his criminal case, and requested an extension of time to file a second amended complaint because he would not have access to his legal documents until his return. <u>See</u> Request for Extension of Time (Doc. 34) at 1–2, filed May 22, 2019.

After Clay's postconviction hearing was continued several times, Judge Klindt administratively stayed the case "pending resolution of the state court proceedings or [Clay's] relocation to the Wakulla Correctional Institution." <u>See</u> Order (Doc. 64) at 1, entered April 30, 2021.  Clay returned to Wakulla Correctional Institution on May 16, 2022, and then filed a motion requesting a 60-day extension of time in which to file his second amended complaint.  <u>See generally</u> Request for 60 Days to File Second Amended Complaint (Doc. 73), filed June 15, 2022.  The Honorable Laura Lothman Lambert, United States Magistrate Judge, granted Clay's motion, but Clay failed to file a second amended complaint by the Court's deadline.  <u>See</u> Order to Show Cause (Doc. 76) at 1, entered August 24, 2022.  Judge Lambert then directed Clay to either file a second amended complaint by September 14, 2022, or show cause why his case should not be dismissed for failure to prosecute.  <u>See</u> <u>id.</u>

On September 12, 2022, Clay filed his operative Second Amended Complaint, in which he lists specific "FOIA requests or appeals relevant to this proceeding" and challenges the "Department of the Navy's reliance upon FOIA's deliberative process exception" in withholding information responsive

to these requests.  Second Amended Complaint at 5, 7.  As it did in response to Clay's Amended Complaint, the Navy filed a motion for a more definite statement contending that it could not prepare a meaningful response because Clay had not sufficiently identified the documents or requests at issue.  See United States' Motion for a More Definite Statement (Doc. 79) at 2–4, filed October 21, 2022.  Specifically, the Navy noted that while Clay stated that only five of his FOIA requests were relevant to this action, he also suggested that he is seeking "to compel the Navy to 'turn-over all documents and communications'" related to information Clay sought.[6]  See id. at 2–3.  Judge Lambert denied this motion because Clay had specifically identified five FOIA requests or appeals at issue and provided sufficient information about the documents from those requests or appeals that he believed were improperly withheld or redacted.  See Order Denying Motion for More Definite Statement (Doc. 80) at  1–2, entered November 21, 2022; see also Second Amended Complaint at 5 (stating that while Clay has submitted "several FOIA requests [and] appeals," "only five" of these requests or appeals are "relevant to this proceeding").  The Navy then filed the instant Motion, asserting that the case is moot because it has provided Clay with all the information it previously withheld with respect to these five requests or appeals.  See generally Motion.

---

[6] To the extent Clay intended to seek such broad relief in his Second Amended Complaint, he would have failed to comply with Judge Klindt's Order requiring him to identify specific FOIA requests which are in dispute.  See Order to Amend (Doc. 33) at 2.

In his Response, Clay contends that the Navy still has not provided "information he knows exists or existed at the time he filed his original FOIA request, additional FOIA requests, appeals and subsequent correspondences." Response at 3.

## II.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) is a motion challenging the subject matter jurisdiction of the court.   Jurisdiction may be attacked facially or factually.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).   In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).   On the other hand, factual attacks "challenge the 'existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"  Id. (citation omitted).  In considering a factual attack on subject matter jurisdiction, the Court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff.  Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009), cert. denied, 130 S. Ct. 3499 (2010).  However, the Eleventh Circuit has cautioned that if a jurisdictional challenge implicates the merits of the underlying claim, the district court should "find that jurisdiction exists and deal with the

objection as a direct attack on the merits of the plaintiff's case."[7] <u>Morrison</u>, 323 F.3d at 925 (quoting <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1261 (11th Cir. 1997)).

In the matter before the Court, the Navy mounts a factual attack on subject matter jurisdiction because it argues that, regardless of whether it was entitled to withhold the information at issue, the Navy is no longer "withholding any records or information from Clay on the basis of [FOIA's] deliberative process privilege." <u>See</u> Motion at 14; <u>cf.</u> Second Amended Complaint at 7 (summarizing Clay's contention that the Navy's "reliance upon FOIA's deliberative process exception is misplaced" because Clay "is seeking to expose government misconduct" and "demonstrate a miscarriage of justice"). Thus, the Court may consider extrinsic evidence such as testimony and affidavits to determine whether jurisdiction exists. <u>Lawrence</u>, 919 F.2d at 1529 ("no presumptive truthfulness attaches to plaintiff's allegations" when

---

[7] In evaluating Clay's Second Amended Complaint, the Court notes that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "'this leniency does not give the court a license to serve as <u>de facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall v. Scott</u>, 610 F.3d 701, 706 (11th Cir. 2010)); <u>see also</u> <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168–69 (11th Cir. 2014). In citing <u>Alford</u>, the Court notes that it does not rely on unpublished opinions as binding precedent, however they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

resolving a factual attack on subject matter jurisdiction); see also Pavlenko v. IRS, No. 08-61534-CIV, 2009 WL 1465463, at *2 (S.D. Fla. Apr. 1, 2009) (evaluating the defendant's "affidavits and exhibits" in concluding that it lacked subject matter jurisdiction over a FOIA case, and explaining that "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"),[8] aff'd, 356 F. App'x 293 (11th Cir. 2009).

## III.   Factual Background

The FOIA requests at issue in this case relate to Clay's former Naval service—specifically, the Navy's internal investigation into accusations that Clay had engaged in criminal conduct.  In 2008, the State of Florida, by information, charged Clay with multiple felonies "for allegedly sexually abusing his daughters."  See Second Amended Complaint at 3–4.  The Navy convened an Incident Determination Committee (IDC) "to determine whether the allegations could be substantiated."  Id. at 1.  The IDC ultimately produced two reports regarding the allegations, and, among other consequences, the Navy "discharged [Clay] from the Navy" based on these reports.  Id. at 4–5.  At the conclusion of a trial in the criminal case, a jury convicted Clay "on all counts."  Id. at 4.

---

[8] Although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

Clay maintains that he is innocent of the charges. <u>See</u> <u>id.</u> at 9 & n.6. He has filed several FOIA requests for documents related to the Navy's IDC investigation—documents which Clay believes "would yield evidence" of his innocence. <u>Id.</u> at 9.  Of these requests, Clay asserts that "there are only five (5) FOIA requests or appeals relevant to this proceeding." <u>See</u> <u>id.</u> at 5.  These consist of an initial request, which resulted in two appeals, and a second request, which resulted in one appeal. <u>See</u> <u>id.</u> at 5–6.  The Court will discuss the two requests, and the corresponding appeals, in turn.

## A. Clay's First Request

Clay's "first FOIA request" is request number DON-NAVY-2015-9318 ("the 9318 request"), which Clay submitted on September 16, 2015. <u>Id.</u> at 5; Declaration at 2.  Clay directed this request to the Naval Criminal Investigative Service (NCIS), and requested "all information pertaining to" his criminal case, such as correspondence from various Navy personnel (including his former commanding officer) and "[t]he NCIS report" of the investigation.[9] <u>See</u> Declaration at 16, 22–23.[10]  NCIS determined that it only had "cognizance over" the portion of Clay's request related to the NCIS investigation, and as

---

[9] On October 7, 2015, Clay sent the Navy a letter in which he described the requested documents in more detail, and the Navy treated this letter as part of the 9318 request. <u>See</u> Declaration at 26. The Court will likewise treat the October 7, 2015, letter as part of the 9318 request.

[10] The copies of Clay's original requests and the Navy's responses to them come from the Navy's filings, not Clay's. <u>See generally</u> Declaration.  However, Clay does not dispute that these exhibits accurately reflect his requests or the Navy's responses and disclosures.

such forwarded "[t]he remainder of [Clay's] request" to the Commander of the Naval Air Station in Jacksonville, Florida.  Id. at 26.  Using Clay's "personal identifiers," NCIS searched its Records Imaging Management System, which "maintains all NCIS criminal investigations," and located Clay's case file, which it released to Clay on October 29, 2015.  Id.  In releasing this information, NCIS withheld or redacted certain information that contained "personal identifiers (such as names and social security numbers) of third parties" pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(C).[11]  Id.

Clay appealed NCIS's decision to redact information from these documents "under FOIA exemptions (b)(6) and (b)(7)(C) because release of such information would constitute an unwarranted invasion of third part[ies'] privacy."  See id. at 29, 37.  Notably, he did not assert that the Navy had withheld any information based on the deliberative process exemption.  The Navy assigned this appeal a tracking number of DON-NAVY-2016-4531 ("the 4531 appeal").  See id. at 5, 42.  In his appeal, Clay requested that the NCIS "release the names of individuals in the rank of O-6 or above."  Id. at 38.  The Office of the Judge Advocate General (OJAG) granted Clay's appeal on March

---

[11] These provisions are two exemptions to the information that must otherwise be disclosed under FOIA.  Specifically, § 552(b)(6) exempts any information "which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552.  And § 552(b)(7)(C) exempts "records or information compiled for law enforcement purposes" to the extent that their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Id.

31, 2016, and NCIS released the information Clay requested.[12]  See id. at 42.

In reviewing Clay's appeal, OJAG also determined that "entities under the

command of Commander Naval Air Forces" might have documents "responsive

to [Clay's] request." Id. at 42, 44.  OJAG accordingly referred Clay's appeal to

the Naval Technical Data and Engineering Service Center (NATEC), which, in

turn, referred the appeal to the Marine Corps Air Station (MCAS) in Beaufort,

South Carolina.[13]  See id.  MCAS then identified a responsive document, a

memorandum dated October 29, 2008, which it disclosed with a redaction.

See id. at 51–52.

Clay appealed MCAS's disclosure, which he characterized as a

"determination . . . to only release one (1) document," and requested that

---

[12] In his Second Amended Complaint, Clay states that this appeal was "granted in part." See Second Amended Complaint at 5.  He does not specifically allege that OJAG denied any part of the 4531 appeal, nor does he assert that the Navy withheld any documents after OJAG's decision.  Instead, he states that the Director of General Litigation for the Office of the Judge Advocate General "provided some documents (unrelated to the IDC), and forwarded the remainder to various military commands for further processing." Id.  Contrary to Clay's representation that this appeal was granted "in part," the Navy's exhibits—which Clay does not challenge—reflect that the OJAG granted the 4531 appeal in full.  See Declaration at 42 ("I hereby grant your appeal and enclose the corrected documents.").

[13] NATEC conducted "a physical search of storage spaces at" its headquarters in San Diego, during which it located 19 pages of responsive documents.  Declaration at 45.  Of these documents, NATEC withheld "portions of one page" under the deliberative process exemption.  See id.  While NATEC informed Clay that this was "an adverse determination that may be appealed," see id. at 46, the Navy asserts that Clay did not appeal NATEC's disclosure or redactions.  Id. at 6 n.3.  Clay does not dispute this in his Response or other materials, nor does he list any such appeal as one which is "relevant to this proceeding" in his Second Amended Complaint.  Indeed, he does not discuss this disclosure at all in his Second Amended Complaint.  Accordingly, the Court determines that these redactions are not at issue in this case.  See Taylor v. Appleton, 30 F.3d 1365, 1367–69 (11th Cir. 1994) (stating the rule that "FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts").

MCAS release all responsive documents, including "emails, letters, messages, notes and any other correspondences."[14]  See id. at 54–55.  OJAG assigned this appeal a tracking number of DON-NAVY-2018-5112 ("the 5112 appeal"). Id. at 8, 57.  On March 13, 2018, OJAG denied the 5112 appeal on the grounds that MCAS staff had not located any additional documents to disclose to Clay despite conducting a reasonable search.  Id. at 57–58.

## B. Clay's Second Request

Clay's "second FOIA request" is request number DON-NAVY-2016-6527 ("the 6527 request").  Second Amended Complaint at 6.  In this request, Clay sought "all official messages, emails, and other correspondences pertaining to [him] regarding [his] civilian case" and military status.  See Declaration at 61–62.  He directed this request to "the office of the Secretary of the Navy," "the office of Navy Personnel Command," and "the office of Navy Personnel Support Detachment" in Beaufort, South Carolina.  See id.  The Office of the Assistant Secretary of the Navy (ASN) identified two documents responsive to Clay's request: a letter from the Chief of Naval Personnel dated December 22, 2008, and a memorandum from the acting Assistant Secretary of the Navy for Manpower and Reserve Affairs dated December 31, 2008.  See id. at 64; see also id. at 66–67 (attaching the redacted letter dated December 22, 2008); id.

---

[14] Clay did not challenge MCAS's redaction to the document that it did release.  See Declaration at 54–55.

at 68–69 (attaching the redacted letter dated December 31, 2008). ASN released these documents to Clay on November 23, 2016, but "redacted all signatures" under exemption (b)(6) on the basis that "the privacy interest of the individual signing the document [was] not outweighed by any cognizable public interest in the content" of the documents. Id. at 64. In addition, ASN "withheld all deliberative process information under exemption (b)(5)." Id.

Clay appealed ASN's redaction of these letters. See id. at 71–73, 76. In his appeal, Clay also noted that—according to its header—the letter dated December 22, 2008, was originally mailed with an enclosure dated September 5, 2008 ("the September 5 letter") which ASN did not attach. See id. at 66, 72. The OJAG assigned this appeal a tracking number of DON-NAVY-2017-003989 ("the 3989 appeal"). In resolving Clay's 3989 appeal on March 14, 2017, OJAG agreed with the ASN's determination that Clay's request did not warrant "disclosure of the names and personal identifiers of individuals" which ASN had withheld under exemption (b)(6). See id. at 78. However, OJAG also noted that "ranks of all personnel and the names of office-director level DoD employees or those in the rank of O-6 and above are not exempt under (b)(6)." Id. Accordingly, OJAG granted Clay's request to the extent that it directed ASN to release both letters without redacting "the names of those in the rank of O-6 and above." See id. at 78–79. As for the missing September 5 letter, OJAG determined that ASN "did not have a copy" of this

document, but that the office of Navy Personnel Command had already provided Clay with this enclosure on September 14, 2016, as part of another FOIA request.[15]  See id. at 79.  OJAG also addressed ASN's "redaction of information pursuant to FOIA's (b)(5) Exemption."  Id. at 79.  After reviewing "an unredacted version of the material at issue," OJAG determined that it contained "pre-decisional recommendations and legal opinions," and thus concluded that it was "properly withheld under the deliberative process privilege."  Id.  Accordingly, it denied Clay's appeal with respect to ASN's redaction of this material under exemption (b)(5).  See id.

## C. Subsequent Release of Information

After Clay commenced this litigation, OJAG reviewed the records it "previously released to [Clay] with b(5) deliberative process redactions."  Id. at 88.  In doing so, it determined that the deliberative process exemption was "no longer required" for this material.  Id.  Accordingly, OJAG released both letters which were responsive to the 6527 request without any deliberative process redactions on February 16, 2023 (the "February 2023 Disclosure").[16] See id.; see also id. at 90–112 (attaching these documents to the Declaration).

---

[15] In his Response, Clay does not dispute that he received a copy of this enclosure. Regardless, the Navy also has attached a copy of the September 5 letter to its Declaration. See Declaration at 107.

[16] In its letter to Clay, OJAG stated that "third party identifying information remains redacted under FOIA exemption 6."  See Declaration at 88.  Specifically, there is a single redaction on the second page of the memorandum dated December 31, 2008.  See id. at 96 (redaction labeled "(b)(6)").

OJAG also included the September 5 letter discussed in its response to the 3989 appeal.  See id. at 88 (explaining that "enclosure 5 consists of Navy Personnel Command's 2016 response to" Clay); id. at 107 (attaching the September 5 letter).

In a document Clay filed after his Response, he asserts that MCAS released additional information "in response to" his 4531 appeal of the 9318 request (the "November 2023 Disclosure").  See Motion to Compel the Release of Unredacted Documents and Complete Files (Doc. 89; Motion to Compel) at 1, filed December 1, 2023.  Clay does not attach the newly disclosed information, but he asserts that it is "heavily redacted and incomplete," and that the Navy "cited FOIA exemptions (b)(5) and (b)(6) for the heavy redacting of the information . . . resulting in a partial grant/denial of the FOIA appeal." Id. at 1–2.  Clay does not attach the newly disclosed documents.  Notably, the November 2023 disclosure is not part of the Navy's 2016 adjudication of the 4531 appeal.  Clay did not direct the 9318 request to the Marine Corps Naval Air Station, and the 4531 appeal did not involve any disclosure by that office. See Declaration at 16 (reflecting that Clay directed his 9318 request to the NCIS); id. at 42 (granting the 4531 appeal).  Clay may mean that the November 2023 Disclosure resulted from a referral from the 4531 appeal.  See id. at 41 (after granting the 4531 appeal, determining that other entities "may have documents responsive to [Clay's] request" and referring it accordingly).

But Clay does not assert that he has exhausted his administrative remedies for any deficiency he believes to be present in any disclosure deriving from such a referral.[17]  Even if he did, any appeal of the November 2023 Disclosure is not identified in the Second Amended Complaint, and therefore is not part of this case.  The disclosures Clay has placed at issue in this case are those the Navy made in response to (1) Clay's 9318 request and two related appeals (the 4531 appeal and 5112 appeal), and (2) Clay's 6527 request and subsequent 3989 appeal.  See Second Amended Complaint at 5–6; see also Order (Doc. 33), entered April 30, 2019 (requiring Clay to identify specific FOIA requests that he seeks to challenge).

## IV.   Discussion

Federal courts are courts of limited jurisdiction.  See Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003) (citation omitted).   "Among other limitations, the federal courts' jurisdiction is circumscribed by Article III [of the Constitution]'s case or controversy requirement."  Id. (citations omitted).  "Mootness is among the important limitations placed on the power of the federal judiciary and serves long-established notions about the role of unelected courts in our democratic system."  Nat'l Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005).  As a result, the court lacks

---

[17] FOIA "clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts."  Taylor, 30 F.3d at 1367.

subject matter jurisdiction over moot claims, as any opinion rendered on such a claim would be an impermissible advisory opinion.  See id. (citations omitted).  The existence of developments in a case subsequent to the initiation of the lawsuit can render an action moot.  See Graham v. Butterworth, 5 F.3d 496, 499 (11th Cir. 1993); see also Nat'l Advertising, 402 F.3d at 1332. Indeed, the Eleventh Circuit has recognized that a case becomes "'moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Graham, 5 F.3d at 499 (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).   "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'"  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000) (citations omitted).

In FOIA cases, "'federal jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records.'" Pavlenko v. IRS, 356 F. App'x 293, 294 (11th Cir. 2009) (quoting U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 (1989)) (affirming dismissal for lack of subject matter jurisdiction where an agency's declaration "established that [it] did not have the records sought," and the plaintiff merely "responded with unsubstantiated and speculative arguments").   Accordingly, "[c]ourts generally hold that once an agency releases the documents responsive to a

FOIA request, subject matter jurisdiction over a claim for injunctive relief under FOIA ceases to exist," and "'the litigation should be dismissed as the claim for relief under FOIA becomes moot.'" Corbett v. Transp. Sec. Admin., 968 F. Supp. 2d 1171, 1188–89 (S.D. Fla. 2012) (quoting Sands v. United States, No. 94-0537, 1995 WL 552308, at *3 (S.D. Fla. Jun. 19, 1995)); see also Lovell v. Alderete, 630 F.2d 428, 430–31 (5th Cir. 1980) (holding that the plaintiff's case was moot once he received the FOIA information he requested, "[e]ven though the information . . . was delivered late");[18] Brown v. U.S. Dep't of Just., 169 F. App'x 537, 540 (11th Cir. 2006) ("[A]s [the plaintiff] has received the documents, the issue has become moot and [he] is not entitled to injunctive relief under the FOIA."). However, a FOIA case is not moot if the Court "is not convinced that the agency has released all nonexempt material." See Nw. Univ. v. United States Dep't of Agric., 403 F. Supp. 2d 83, 86 (D.D.C. 2005) (declining to dismiss a case as moot because the newly disclosed documents contained unexplained redactions, and the court could not determine "the propriety of the defendant's exemptions and withholdings").

In his Second Amended Complaint, Clay asserts that the Navy "has denied every request" he has made to access "documents and communications

---

[18] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

related to IDC's deliberative process under exemption (b)(5) of FOIA."[19]

Second Amended Complaint at 6.   Accordingly, he challenges "the Navy's reliance upon FOIA's deliberative process exemption." Id. at 7.   Specifically, Clay contends that the Navy cannot continue to withhold information under this exemption because given the "important reasons for disclosure . . . the deliberative process privilege does not deserve the normal protection the law accords it."[20]   Id. at 10.  On this basis, he asks the Court to "direct the [Navy] to reveal the deliberative process of the IDC, including all documents and communications relevant to its decisions."   Id.   In the Motion, the Navy contends that it has now provided Clay with all information it previously withheld under the deliberative process exemption.  Motion at 14–15.  If the

---

[19] Exemption (b)(5) of FOIA provides that FOIA "does not apply to matters that are . . . inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" unless such materials were "created 25 years or more before the date" of the request.  5 U.S.C. § 552(b)(5).  The parties interchangeably refer to this provision as "exemption (b)(5)," see Second Amended Complaint at 4, "the deliberative process exemption," see id. at 6, "Exemption 5," see Declaration at 2, or "the deliberative process privilege exemption," see Motion at 1.

[20] Clay emphasizes that he is pursuing disclosure of these documents because he "is seeking to expose government misconduct" and to "demonstrate a miscarriage of justice of being convicted for offenses he is actually innocent of."  Second Amended Complaint at 7.  And in his Response, he stresses that he seeks to correct a "grave travesty of justice that cannot be allowed to continue."  See Response at 5.  While a plaintiff seeking information under FOIA generally does not need to provide any explanation or justification for their request, the plaintiff's purpose in seeking the information may be relevant to overcome certain exemptions by establishing that "disclosing the withheld information 'would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.'"  See News-Press v. U.S. Dep't of Homeland Sec., 489 F.3d 1173, 1191 (11th Cir. 2007) (quoting U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994)).  Here, however, the Navy argues that it is no longer withholding any relevant information based on its deliberative process exemption.  Accordingly, Clay's purpose in seeking the information is immaterial in resolving the instant Motion.

Navy has provided Clay with all of the information it previously withheld pursuant to the deliberative process exemption, see Second Amended Complaint at 4, then the Court can no longer provide Clay with the relief he requests,[21] see Corbett, 968 F. Supp. 2d at 1189.  In analyzing whether this case is moot, the Court will first identify the specific information that the Navy withheld pursuant to the deliberative process exemption.  Next, the Court will discuss whether the record demonstrates that the Navy has now provided Clay with that information.

## A. The Information Withheld

As an initial matter, Clay does not allege that the Navy withheld information under the deliberative process exemption in response to his 9318 request or the two related appeals (the 4531 appeal and the 5112 appeal).  See Second Amended Complaint at 5.  Rather, based on his allegations in the Second Amended Complaint, the only material Clay contends that the Navy withheld based on the deliberative process exemption was material responsive to the 6527 request.  Cf. Pavlenko, 2009 WL 1465463, at *2 (determining that the court lacked "jurisdiction to devise remedies" for the plaintiff under FOIA because "on the face of the [c]omplaint alone, the [agency] has not 'improperly

---

[21] Significantly, Clay does not allege that the Navy conducted an inadequate search. Indeed, in his Second Amended Complaint he does not even allege that the Navy failed to locate all documents responsive to his requests.  Instead, he specifically challenges the Navy's conscious "refus[al] to turn-over" documents it has identified as responsive.  See Second Amended Complaint at 2; see also id. at 6 (stating that the Navy has "denied every request" Clay has made by invoking "exemption (b)(5) of FOIA" to withhold information).

withheld agency records'"). Notably, the Navy's correspondence with Clay confirms that it did not assert the deliberative process exemption to withhold or redact information disclosed as part of the 9318 request, the 4531 appeal, or the 5112 appeal. See Declaration at 26–27 (responding to the 9318 request); id. at 42 (granting the 4531 appeal); id. at 57–59 (denying the 5112 appeal).[22] Thus, the Court turns to the 6527 request in analyzing the Navy's withholding of information under the deliberative process exemption.

In response to the 6527 request, the Navy provided Clay with "the documentation in the possession" of the ASN's office. Id. at 64. However, it "redacted all signatures" under the privacy exemption and "withheld all deliberative process information" under the deliberative process exemption.[23]

_____

[22] As discussed above, Clay contends that in 2023 the Navy disclosed additional information from MCAS "in response to" his 4531 appeal, and that it redacted this information based in part on the deliberative process exemption. See Motion to Compel at 1–2. While the details of this new disclosure are unclear, it is not part of the 4531 appeal— an appeal which was granted in 2016, which did not involve the deliberative process exemption, and which did not involve a disclosure from MCAS. See Declaration at 42. The 5112 appeal did involve the release of documents from MCAS, but that appeal was resolved in 2018 and also did not involve the deliberative process exemption. See id. at 57–59 (denying Clay's appeal on the grounds that MCAS provided Clay with the only responsive document it was able to locate). Any redactions to documents in the new disclosure simply are not part of the 4531 appeal. See id. at 42; see also Second Amended Complaint at 5 (making no reference to the Navy's reliance on the deliberative process exemption in resolving the 4531 appeal).

[23] Clay appears to have interpreted this to mean that the Navy withheld entire documents from disclosure rather than redacting material in the documents it released. See Second Amended Complaint at 6 (stating that "more documents were unredacted and released" as part of the 3989 appeal, but that "those that fell within the deliberative process exemption of FOIA were with-held [sic]"). However, the record does not support this interpretation. ASN stated that it provided Clay with "the documentation" in its possession, subject to certain redactions, and identified the deliberative process redactions in its disclosures. See Declaration at 64 (describing its disclosures); see also id. at 66–69 (marking

See id.  In the Declaration, Lt. Degner-Lopez states that "[n]o records were withheld in full" from those disclosed as part of the 6527 request, but rather "the records provided contained redactions" to withhold deliberative process information.  Id. at 8.  Clay does not dispute this in his Response.  The Navy denied Clay's 3989 appeal to the extent that it declined to release these documents without the deliberative process redactions.  See id. at 78–80.  Here, Clay specifically challenges the Navy's withholding of information "under exemption (b)(5) of FOIA," Second Amended Complaint at 6, and that claim involves only the two documents that the Navy released with redactions in response to the 6527 request.  Accordingly, the record establishes that the "information withheld" which is at issue in this action is the information redacted by the Navy in reliance on the deliberative process exemption when it released two documents (totaling four pages) to Clay in response to the 6527 request.

## B. Clay Received the Information the Navy Withheld

The undisputed evidence in the record demonstrates that Clay has now received the two documents from the 6527 request without the deliberative-process redactions.  The first of these documents is a two-page letter from the

---

redactions as either "(b)(5)" or "(b)(6)" redactions).  And in responding to the 3989 appeal, OJAG did not refer to any full documents which were withheld but rather to ASN's "redaction of information" pursuant to the deliberative process exemption.  See id. at 79.  Accordingly, the undisputed evidence in the record shows that the Navy did not identify additional documents which it withheld under the deliberative process exemption.

Chief of Naval Personnel to ASN dated December 22, 2008.  See id. at 83–84.

The Navy released this letter without redaction as part of the February 2023

Disclosure.  See id. at 10; see also id. at 90–91 (attaching the unredacted

letter).  The second document is a memorandum dated December 31, 2008.

See id. at 85–86.  The Navy also released this letter in the February 2023

Disclosure.[24]  See id. at 10; see also id. at 93–94.  While Clay challenges "the

Navy's reliance upon FOIA's deliberative process exception," see Second

Amended Complaint at 7, he "now has all the information he requested" in

this case.  See Lovell, 630 F.2d at 430.  Clay does not argue—let alone plead

facts to suggest—that the Navy's search was legally inadequate, nor does he

ask the Court to determine the adequacy of any search the Navy made for

responsive documents.[25]  Instead, he appears to be "seeking production of

---

[24] As noted above, the February 2023 release of this letter contained one redaction on its second page.  See id. at 94.  However, Clay does not challenge this redaction in the Second Amended Complaint or his Response, and it is not a redaction under the deliberative process exemption.  In the disclosure, the redaction is identified as a "(b)(6)" redaction.  See id.  It also follows the phrase "[p]repared by:," corroborating the conclusion that this is a name or other identifying information redacted pursuant to exemption 6.  Most significantly—and somewhat confusingly—the Navy did not redact this information in its entirety when it released the letter pursuant to Clay's 3989 appeal.  See id. at 86 (revealing the majority of this redaction, which contains the name of "CAPT Benjamin Abalos, SAML").  Accordingly, the Court is satisfied that this redaction is not based on the deliberative process exemption, and thus does not undermine the Navy's argument that the case is moot.

[25] The Court notes that in some cases an agency's belated production of documents may raise new questions about the adequacy of the agency's search or the propriety of its withholdings.  See Nw. Univ., 403 F. Supp. 2d at 86 (in a lawsuit challenging the agency's failure to respond to a FOIA request at all, the agency did not moot the case by releasing new documents because the court could not determine whether the redactions and withholdings were proper).  But this issue is not present here: in the February 2023 Disclosure, the Navy did not release any new documents which it had not previously provided to Clay, it simply removed the redactions it had previously made under the

missing records, which action is not within the purview of the Freedom of Information Act."[26]  Nolen v. Rumsfeld, 535 F.2d 890, 891 (5th Cir. 1976).  To the extent that Clay asserts in his Second Amended Complaint that the Navy has improperly withheld agency records, that claim is moot.  The undisputed evidence in the record establishes that the Navy is no longer withholding the contested information from Clay—wrongfully or otherwise.

## C. Clay's Arguments are Unavailing

In Clay's Response, rather than addressing whether the Navy has released the information it previously withheld under the deliberative process exemption—i.e., the relief he requested in his Second Amended Complaint— Clay focuses almost entirely on the fact that he has not received specific documents he believes to exist.  See Response at 8 (requesting that the Court "direct the [Navy] to contact" specific individuals to locate responsive documents).  These arguments, which do not engage with any relevant legal

---

deliberative process exemption.  This unredacted material provides no reason to doubt the adequacy of the Navy's search.

[26] While Clay asserts that certain documents existed at some point in the past, he does not provide any support for his belief that the Navy still had possession of these records at the time of his request.  Indeed, "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it."  Miller v. U.S. Dep't of State, 779 F.2d 1378, 1385 (8th Cir. 1985).  And while Clay identifies specific individuals who may have had relevant documents at some point in the past, see Response at 4–5, he does not provide any reason to conclude that they still have documents that were not otherwise disclosed.  Indeed, he does not even assert that they are still members of the Navy.  See Kissinger v. Reps. Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980) (explaining that FOIA does not require agencies to recover documents from third-party individuals).  Clay's conclusory assertions that other documents exist are simply insufficient to establish that the Navy has wrongfully withheld records in responding to Clay's FOIA request.

standard, appear to assume that the Navy has not complied with its FOIA obligations because <u>Clay</u> is not satisfied with the contents of the disclosed information.  <u>See, e.g.</u>, <u>id.</u> at 3 (asserting that the disclosure "falls short of properly [sic] answering his Second Amended Complaint" because the exhibits do not provide Clay with specific information that he believes will bolster his criminal case).  Indeed, Clay dedicates his Response to discussing the content of specific documents related to the IDC investigation that he believes exist, the "effect of not having" these documents to support his arguments in his criminal case, and the alleged misdeeds of his commanding officer that he believes these documents may reveal.  <u>See id.</u> at 2, 7.  But Clay's speculation that such materials or documents exist is insufficient to keep his claim alive.  <u>See</u> <u>Pavlenko</u>, 2009 WL 1465463, at *2 (determining that the court lacked subject matter jurisdiction where the plaintiff had "nothing other than speculation that the [government agency] could have attempted additional avenues to search for the requested documents").  And Clay's arguments merely "raise[ ] non-pertinent issues and, indeed, indicate[ ] [Clay's] misapprehension of the dispute currently before the Court."  <u>See</u> <u>Stone v. Dep't of Just.</u>, No. 11-81084-Civ-Ryskamp/Vitunac, 2012 WL 13134051, at *1 (S.D. Fla. May 22, 2012) (rejecting a plaintiff's contention that there must be additional documents responsive to his FOIA request because while it was "possible that the Government had records . . . that it later

destroyed," or "that the Government had no records" and thus wrongfully sentenced the plaintiff, FOIA offers no relief when "the requested documents are not in the Government's possession"), report and recommendation adopted, 2012 WL 13134051.

Throughout his filings, Clay appears to confuse the distinction between the Navy's reliance on the deliberative process exemption and the Navy's failure to provide him with deliberative process materials.   But this distinction is important: FOIA does not require an agency to locate every responsive document or to "take every step desired by a requester."[27] Taylor Energy Co. LLC v. U.S. Dep't of the Interior, 271 F. Supp. 3d 73, 86 (D.D.C. 2017).    FOIA also does not require an agency "to maintain any specific documents," and an agency is only "required to produce documents actually in its possession." Bory v. U.S. R.R. Ret. Bd., 933 F. Supp. 2d 1353, 1361 (M.D. Fla. 2013) (citing Kissinger, 445 U.S. at 152); Nolen, 535 F.2d at 891 (explaining that FOIA does not require disclosure of missing records).   Clay's dissatisfaction with the documents available to him—standing alone—does not create a live controversy in this case.   See Kissinger, 445 U.S. at 139 (holding that "even if a document requested under the FOIA is wrongfully"

_____

[27] In a later filing, Clay even acknowledges the possibility that the Navy simply "is not aware of" one such document he seeks. See Motion to Compel at 3–4 (asserting that the Navy either "is not aware" of the document or else is "intentionally withhold[ing]" it). But in doing so, Clay fails to appreciate that if a reasonable search for this document did not make the Navy "aware of" it, FOIA does not provide him with a remedy. See Taylor Energy Co. LLC v. U.S. Dep't of the Interior, 271 F. Supp. 3d 73, 86 (D.D.C. 2017).

outside of an agency's possession, FOIA provides no authority for a court "to order the production of such records" (emphasis added)).  The issue before the Court in resolving the Motion is not whether Clay has received sufficient information to prove his innocence.  See Response at 7–8.  Nor is it whether Clay's former commanding officer is guilty of unlawful command influence.  See id. at 8.  The issue is whether the Court can still provide Clay with meaningful relief for the wrong he asserts in his Second Amended Complaint—the Navy's withholding of information based upon the deliberative process exemption.[28]  See Brown, 169 F. App'x at 540.  It cannot because the record establishes that Clay has obtained the very relief that his FOIA claim could produce.  Accordingly, Clay's arguments do not undermine the Court's conclusion that this action is moot.

## V.    Conclusion

For the reasons discussed above, the record establishes that the Navy has released all information that it previously withheld under FOIA's deliberative process exemption.  Because the Navy is no longer withholding

---

[28] The Court notes that Clay filed his Second Amended Complaint in response to the Court's instruction to provide a more definite statement of the claim he sought to assert in his Amended Complaint.  See Order (Doc. 33).  And he filed his Amended Complaint after the Court struck his original Complaint and similarly directed him to file a short and plain statement of his claim or claims.  See Order (Doc. 20), entered April 9, 2018.  Accordingly, the request for relief Clay presents in the Second Amended Complaint represents his third attempt to clearly plead the specific claim he seeks to bring in this action.  While the Court construes Clay's pleadings liberally, it cannot re-write them.  See Campbell, 760 F.3d at 1169 (explaining that the leniency afforded to pro se litigants "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action" (quotation omitted)).

the information Clay asserts was improperly withheld in his Second Amended Complaint, the Court is without the ability to provide him with any meaningful relief.  His FOIA claim is moot, and as such the Court lacks subject matter jurisdiction over the FOIA claim in the Second Amended Complaint.  See Tax Analysts, 492 U.S. at 142 (without a showing that an agency has improperly withheld agency records, "a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements").  The Navy's Motion is therefore due to be granted.

Accordingly, it is

**ORDERED:**

1.  Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Doc. 85) is **GRANTED in part** and **DENIED in part**.

    a. The Motion is **GRANTED** to the extent that the Second Amended Complaint (Doc. 77) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

    b. The Motion is otherwise **DENIED**.

2.    The Clerk of the Court is directed to enter judgment of dismissal

without prejudice in favor of Defendant Department of the Navy,

terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 28, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record
Pro Se Party